In the Matter of the Petition of REUBEN J. STRAUSS, Petitioner, Respondent, for an Order under Civil Practice Act, Article 78, against WILLIAM A. HANNIG and Others, as Members of the Board of Examiners of the Board of Education of the City of New York, Appellants, to Compel Performance of a Duty Specifically Enjoined by Law.*

First Department, April 6, 1939.

*James Hall Prothero* of counsel [*Arthur Bainbridge Hoff* with him on the brief; *William C. Chanler, Corporation Counsel*], for the appellants.

*George Dyson Friou*, for the respondent.

* Revg. 169 Misc. 29; 170 id. 371.

CALLAHAN, J.   Petitioner passed the scholastic examination for the position of day high school teacher.   Defendants, acting on the advice of their medical staff that petitioner was suffering from a heart ailment, refused to place his name on the list of persons eligible for appointment.   The petitioner thereupon initiated these proceedings and procured an order directing the trial of the question as to whether the action of the board of examiners was arbitrary, capricious and unreasonable.   This issue was tried before the court without a jury.   The court found in favor of petitioner and granted an order directing his appointment.   Both orders have been appealed from.   We think that they were both incorrect.

The papers upon which the first order was granted and the proof in connection with the trial of the issue disclose that the board of examiners, pursuant to the provisions of their by-laws, had a physical examination made of the petitioner by their medical staff, in order to determine whether the petitioner was physically fit for the position sought.   The requirement of the board of examiners was that physical fitness was to imply sound general health and freedom from organic and functional defects that might impair or impede the applicant's freedom and celerity of movement, and freedom from other physical affections that might curtail the usefulness of the applicant when serving as a teacher.   The report of the medical staff was to the effect that petitioner was suffering from a permanent and progressive heart ailment, and that because of that condition they could not rate him as a satisfactory person to license as a teacher.   Thereafter petitioner's case was referred for re-examination to an outside heart specialist employed by the board on the recommendation of the Academy of Medicine. The report of the specialist, a man of eminence in his profession, was that the petitioner was suffering from a heart condition, consisting of an aortic insufficiency, probably rheumatic in origin and not congenital; that the petitioner had a marked heart lesion, organic in character.   The specialist was of the opinion that petitioner was physically unfit to teach school.

Petitioner thereupon produced evidence of his examination by other physicians, including doctors of wide experience who, although they found a heart condition present, diagnosed it as a mere congenital murmur and not of such severity as to render applicant unfit to teach.   Petitioner showed that he was appointed a teacher in training seven years ago and before such appointment a doctor connected with the board of examiners pronounced him fit for such appointment, though a heart condition was noted. In addition, applicant produced proof showing that his present physical condition was such that he took an active part in athletics, etc.   The medical staff of defendants thereupon re-examined the

case, but adhered to their decision that the petitioner was physically unfit.

Upon the trial of the issues herein much expert medical testimony was offered on both sides. Petitioner's physicians, while they conceded that applicant had an abnormal heart condition, said it was of congenital origin and were of the opinion that it would not interfere with his ability to teach. Those called for the board of examiners maintained that the condition was of different origin and of such a nature that it would in the near future interfere with the petitioner's fitness to teach.

After the receipt of such testimony the finding was made by the court that the determination was arbitrary.

Upon such a conflict of testimony we have at most a difference of expert opinion concerning the physical fitness of the applicant for the position. The mere existence of differences of opinion as to the petitioner's physical fitness would not warrant a finding by this court that a determination made by the Board to act on the advice of its own medical staff was arbitrary or capricious. In fact, if the board, under such circumstances, had appointed the petitioner in disregard of the opinion of its medical staff, there might be greater reason for such a finding. (*Matter of Potts* v. *Kaplan*, 264 N. Y. 110.)

Nor can it be said that the board in this case fixed standards which were unreasonable with respect to the physical fitness of candidates. The rule of law is that, unless the standards applied by the appointing body are so clearly irrelevant and unreasonable as to palpably be arbitrary and improper, they are to be sustained. (*People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 570, 576.) Here the board employed a medical test in the nature of a physical examination by qualified physicians to ascertain the physical condition of the applicant. Included in the examination were tests to ascertain whether the applicant suffered from a diseased heart. The medical staff had adopted and followed a general policy of rejecting heart cases revealing organic murmurs, and heart cases of rheumatic origin. The medical staff, as well as the consultant it employed, found that petitioner's condition came within the cases usually excluded. That other physicians of equal standing in the profession, though admitting some heart disorder, disagreed with the classifications made, would not make the standards less proper or applicable.

One of the principal differences between the doctors in the present case was whether the heart ailment was of a congenital or rheumatic origin. Opinion as to the origin of heart disease depends to some extent on the statements of the patient concerning his health in earlier life. But such statements need not

be wholly credited if the clinical examination makes them improbable. :

At least in one instance in the present case a doctor said that the clinical examination disclosed evidence which created the impression in his mind that the condition he found was not congenital. It is evident that some of the opinions herein were based on matters of case history, while others relied to a greater extent on the clinical examination. It is not the province of a court, under the circumstances, to determine which opinion is of greater value. It is only where the appointing power acts illegally or capriciously that the court will interfere. Although it might have been preferable had petitioner been rejected in 1929 when he applied for appointment as teacher in training, the failure to reject him at the earlier examination does not afford him any greater legal rights. No tenure of office was secured as substitute teacher, and a more liberal standard might have been applied in the examination for that appointment. Further, the ailment might be more pronounced at the present time.

Petitioner contends that it is only his present physical fitness that may be inquired into. He takes the position that, because he is at present capable of teaching, he may not be rejected because the doctors have determined as a matter of prognosis that disability will develop in a short time. Of course, the scope of a physical examination should not include mere speculation as to the span of life, but it seems reasonable to permit it to include inquiry into the question as to whether a recognized disease, presently existing, will render the applicant unable to perform his duties in a short time. To this extent, the inclusion of prognosis by the medical staff of the board is not the use of standards which are improper. The public's interests are sufficiently involved to permit consideration of the element of prognosis within reasonable limitations on the question of fitness. Teachers attain tenure of office and pension rights after permanent appointment and service in the public schools. Those in charge of children in the classroom may be required to be reasonably fit to meet various emergencies. We cannot say because an applicant may engage in physical exercise today, that the advice of medical science may not be availed of to ascertain whether a present infirmity will disable him in the near future. At least it may not be held arbitrary for the board to take heed of such advice.

The orders appealed from should be reversed, with costs, and the petition dismissed.

UNTERMYER, DORE and COHN, JJ., concur; MARTIN, P. J., dissents.

Orders reversed, with costs, and the petition dismissed.