In the Matter of the Application of MATTHEW THOMASSON, Respondent, for an Order Pursuant to Article 78 of the Civil Practice Act, against LEWIS J. VALENTINE, as Commissioner of Police of the City of New York and as Trustee of the Police Department Pension Fund, Appellant.

First Department, February 13, 1942.

*Charles F. Murphy* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the appellant.

*Abraham Bernard King* of counsel [*Samuel Luloff* with him on the brief; *Samuel & Morris Luloff*, attorneys], for the respondent.

CALLAHAN, J. The petitioner was appointed a patrolman in the police department of the city of New York in 1921. He was retired in 1939 because he was found unfit for police duty. A pension of $1,368 — which was approximately one-half of his salary — was allotted to him. This pension was based on a finding by

the police commissioner which in turn was based on a certificate of the department's medical board, that petitioner's disability was not incurred by reason of any injury received in the performance of duty. Petitioner contended, on the other hand, that the disability was service-incurred, and sought an increase of his pension to three-fourths of his salary, pursuant to the provisions of subdivision 3 of section B18–5.0 of the Administrative Code of the City of New York. To enforce his claim, petitioner brought this proceeding under article 78 of the Civil Practice Act, and an order was heretofore entered directing a jury trial of the issue as to whether petitioner's disability was incurred in the performance of duty. Such trial has been had and the jury has rendered a verdict in petitioner's favor. Defendant now appeals from an order directing the larger pension.

We have reviewed the testimony offered upon the trial and find that there was no justification for the submission to the jury of any issue of fact, and that upon the showing made the petitioner's application should have been dismissed. We find that the evidence discloses merely a difference of opinion between medical witnesses as to whether the condition which required petitioner's retirement was the proximate result of an injury which petitioner suffered in the performance of police duty in 1925.

Petitioner was retired because he was found to be suffering from a psycho-neurosis. He does not dispute that finding. His own medical witnesses conceded the existence of that condition. The disputed question involved is whether the psycho-neurosis is traceable to a physical injury to petitioner's chest and back sustained in attempting to make an arrest in 1925.

After the injury referred to, petitioner received occasional intermittent medical treatment for pains in his back, from 1925 to the date of his retirement. Several physicians who were appointed by the police department examined petitioner during those years. Some found evidence of a pathological condition of his back. Others reported that no evidence of injury could be found. The doctors who found abnormality reported it variously as the apparent result of an old fracture, and as a congenital spinal curvature. At times petitioner wore a brace. He visited various clinics here and abroad for treatment. During this period he became increasingly nervous. In 1932 or 1933 he was examined by a neuropsychiatrist designated by the police department. Eventually he was found to be suffering from a psycho-neurosis.

After having been deprived of his revolver and assigned to light work for several years, he was later retired because of his mental condition. The members of the medical board which recommended

his retirement were not neuro-psychiatrists. They made a physical examination of petitioner and found no evidence of contributing physical disability. Admittedly, their finding as to his nervous disorder was based largely on reports of the neuro-psychiatrist.

We find considerable medical testimony in the record tending to show that petitioner had some pathological condition in the region of his fifth lumbar vertebra. Some of the police department's doctors found such condition existed, but expressed a doubt as to whether it was the result of trauma or a toxic infection. But the issue was not the existence of evidence of a physical injury but whether the present mental disturbance was caused by it.

The rule is well settled in this class of cases that where the issue involved is based solely on a conflict of medical testimony concerning the origin of a physical disorder, it is the function of the department head and not of the courts to resolve that question. As was said in *Matter of Strauss* v. *Hannig* (256 App. Div. 662; affd., 281 N. Y. 612): " It is not the province of a court, under the circumstances, to determine which opinion is of greater value. It is only where the appointing power acts illegally or capriciously that the court will interfere."

While that statement was made concerning the rule to be applied as to the finality of the decision of an appointing body concerning the qualifications of a candidate, rather than a decision made in retiring a pensioner, the rule as to the degree of discretion allowed to the department head would seem to be the same in both instances.

Quite recently, in *Matter of Eichler* v. *McElligott* (259 App. Div. 151; affd., 283 N. Y. 716), we held that where there was some medical evidence to sustain a departmental order fixing the existence of sufficient physical disability to retire a New York city fireman, in the absence of a showing of fraud, accident or mistake, there was no justification for a court order reinstating him. The applicable statutes controlling the retirement of policemen and firemen are quite similar. Both invest the department head with the power and duty of deciding the issue as a matter of discretion. In *Matter of Gough* v. *Valentine* (260 App. Div. 998), a case where the issues were quite similar to those in the present case, we followed the *Eichler* decision (*supra*), holding that the rule indicated in the *Eichler* case was to be applied to police retirements.

In the present case there is no claim of bad faith. Petitioner does claim, however, that the decision of the commissioner, based on the finding of the medical board, is attributable to mistake, because the department's psychiatrist, who rendered the opinion that disability was not service-incurred, based that opinion on a false premise, to wit, that petitioner suffered from no physical

organic disorder. We have examined this claim, but, on the evidence adduced, find no issue of mistake within the meaning of the term as used in the controlling authorities.

If in the present case petitioner's medical witnesses had disputed the finding of disability, or claimed that there was an error in the diagnosis of psycho-neurosis, due to the fact that such diagnosis was based on the non-existence of any physical disorder, there might be a more tenable basis for the petitioner's claim of mistake. (See *Matter of Hodgins* v. *Bingham,* 196 N. Y. 123; *Matter of Nilsson* v. *LaGuardia,* 259 App. Div. 145; *Matter of Doherty* v. *McElligott,* 258 id. 257.) But we have no such dispute or claim in the present case. Here the expert witnesses called by both sides on the trial agreed that petitioner was suffering from a psycho-neurosis. None of them claimed he was able to perform his duty as a patrolman. These witnesses likewise agreed as to the usual manifestations of the mental disorder specified. Both testified that it is evidenced to some extent by complaints of physical weakness and pain, for which no organic basis can be found. But the departmental psychiatrist apparently did not base his diagnosis solely on such symptoms. There were other evidences of mental disturbance. The only substantial difference between the opinion rendered on the trial by the neuro-psychiatrist called by petitioner, and that given by a similar expert called by the department, was as to the genesis of petitioner's nervous affliction. Petitioner's expert contended, in answer to an hypothetical question, that the psycho-neurosis developed during the course of the petitioner's chronic invalidism resulting from the physical injury incurred in the 1925 episode. He frankly admitted, however, that reasonable medical men might well differ with him with respect to whether there was causal relation between the physical injury and the mental disorder.

The police department's expert, on the other hand, asserted, in answer to a like hypothetical question, that, in his opinion, the accident of 1925 was not the proximate or immediate cause of the condition for which petitioner was retired.

We thus have a situation where the petitioner is not denying the existence of the nervous condition for which he was retired, but merely asserts that said disorder is due to a prior physical injury as a direct producing cause thereof.

The medical board found no connection between the injury and the present condition.

There was competent medical opinion evidence on both sides of this controversy concerning causal relation. Upon such divergent medical views, the courts should not upset the determination of the medical board, and of the commissioner who followed same,

merely because the triers of the fact in a legal proceeding differ with the department's representatives as to which expert's opinion was correct.

Assuming that the finding of the medical board as to lack of causal relation between the alleged service-incurred injury and the cause of retirement was not final or conclusive, it afforded sufficient basis for the exercise of the commissioner's discretion, and a determination made thereon in good faith is not an arbitrary or capricious one. Quite the contrary, it is one supported by some credible evidence and rendered in the exercise of a discretion cast by law upon the departmental officials. The case is quite different from one where the policeman asserts the finding of the medical board to be without any basis in fact. (See *Matter of Hodgins* v. *Bingham*, *supra*.) Here the issue resolves itself eventually into a scientific dispute as to what caused a mental disease.

We find the evidence on the question of causal relation, to say the least, equally balanced. By this statement we do not intend do suggest that " weight of evidence " is the test to be applied. The test rather is the existence of some credible legal evidence to support the commissioner's finding. There is ample evidence of that nature in the present case.

The order should be reversed, with fifty dollars costs and disbursements to the appellant, and the proceeding dismissed.

MARTIN, P. J., O'MALLEY, TOWNLEY and COHN, JJ., concur.

Order unanimously reversed, with fifty dollars costs and disbursements to the appellant, and the proceeding dismissed.