Matthew M. Levy, J.
The petitioner has instituted these two proceedings for an order directing the Board of Trustees of the New York City Fire Department to place her name on the pension rolls of the City of New York as a widow of a deceased member of the department entitling her to a pension of one half of her husband’s annual salary.
It is alleged by the petitioner that, in 1939, her husband was duly appointed a fireman in the Fire Department of the City of New York, after he had passed a departmental physical examination with an average of 99.40 per cent. During some three and one-half years prior to May of 1949, the fireman spent a total of 108 hours of duty at 10 fires under conditions of extreme cold, heat, smoke and gas.
On May 17, 1949, while actively engaged in the performance of his duty as fireman, he responded to an alarm and, while releasing the bow line of a fireboat, he complained of severe chest pains. Upon returning to the berth of the fireboat, he requested other personnel to handle the lines because his severe pain persisted, and thereafter he reported to the Medical Examiner because of the pain. The chest X ray taken at that time allegedly indicated a definite cardiac enlargement, but it is claimed that the fireman was not informed of this. He was ordered back to full duty, and no precautionary measures of any nature in respect of the fireman were either advised or taken by the department or its medical office.
Thereafter, and for two years, he was on full-time active duty. In May of 1951, because of severe chest pains, a second X ray was taken, on the basis of which he was immediately admitted to a hospital. A re-examination of the 1949 chest X-ray plate revealed that definite cardiac enlargement had then existed. In August of 1951, the fireman was ordered on light duty, where he remained until January of 1959, when he was found unfit for any duty in the Fire Department due to severe rheumatic heart disease with aortic insufficiency and congestive failure. On April 6,1959, he died.
*938 Subdivision b of section B19-6.0 of the Administrative Code of the City of New York, insofar as pertinent here, reads: “ In case any member of the uniformed force of such department is killed while actually engaged in the performance of duty, or if death ensues, or results from disease, as the immediate effect of injuries received, the board of trustees of such fund, upon evidence submitted to it, shall have power to decide whether death so occurred and upon such decision shall award to the widow of such member an annual allowance as a pension, to be paid out of such fund in an amount not to exceed, except as herein provided, one-half of the salary or compensation of such member at the date of his decease ’
Pursuant to the foregoing provisions of the Administrative Code, the petitioner made due application for the pension therein specified. This request by the petitioner for a widow’s line-of-duty pension was denied by the respondent Board of Trustees by a tie vote. Thereafter, and in August, 1959, the petitioner duly instituted the first of the instant proceedings. The respondents did not serve or file an answer to the petition (see Civ. Prae. Act, art. 78, § 1291). The proceeding was adjourned from time to time to June 5, 1961, when it was placed on the Gfeneral Calendar in order, apparently, to enable the petitioner to make application to the Board of Trustees for reconsideration. In any event, in June, 1961, the petitioner again applied for the pension, which was again denied on August 16, 1961, also by an equally divided Board of Trustees, and the second article 78 proceeding was duly instituted in this court, returnable on December 15, 1961. The first proceeding was restored to the calendar for the same date. Both matters were then adjourned from time to time until they duly came on to be heard on March 8,1962. One answer was filed by the respondents to both petitions. Accordingly, the proceedings are consolidated and will be disposed of together.
In their answer, the respondents state that, on receipt of the original application for a widow’s pension, they requested and received a report from the Chief Medical Examiner of the Fire Department. That report, dated June 22, 1959, stated, in substance, that the fireman did full duty until May 17, 1951, when he was given a sick leave for an enlarged heart and heart disease; that he never did full duty thereafter; that the X-ray plate in 1949 showed a slightly enlarged heart, which was not called to the attention of the Fire Department medical officers; that an X-ray photograph of the heart on August 11, 1951, showed no changes whatsoever; that the fireman had appeared before three Medical Boards in the department and on each *939 occasion he was found to he unfit for any duty because of rheumatic heart disease, but it was also found that the condition was not caused in the performance of duty; that in 1956 the fireman appealed from one of the Medical Board’s decisions when his physician and the department doctor disagreed, and a third or arbitrating specialist was called in as an impartial consultant; that the latter reported that the deceased had a different type of heart disease from that previously diagnosed, but that in any event the specialist doubted that the deceased’s disability was related to his occupation; that the certificate of death stated that death was due to natural causes; and that in his, the specialist’s, opinion the Chief Medical Officer reported that death was not caused in line of duty or caused by work in the Fire Department. The respondents’ return states that, based on such report and medical history of the deceased and the other medical reports, the petitioner’s application was denied by a tie vote, and that upon reconsideration the application was again denied by an equally divided vote.
‘ ‘ The rule is well settled in this class of cases that where the issue involved is based solely on a conflict of medical testimony concerning the origin of a physical disorder, it is the function of the department head and not of the courts to resolve that question ” (Matter of Thomasson v. Valentine, 263 App. Div. 334, 336). “It is not the province of a court, under the circumstances, to determine which opinion is of greater value. It is only where the appointing power acts illegally or capriciously that the court will interfere ” (Matter of Strauss v. Hannig, 256 App. Div. 662, 665, affd. 281 N. Y. 612).
“ Since the board of trustees must determine whether [the fireman’s death] was caused or induced by [his] actual performance of the duties of his position, and in reaching such determination the board may disregard the finding of the Medical Board, the court cannot direct the board of trustees to accept that finding unless that finding is incontestably correct and there is no room for reasonable difference of opinion.” (Matter of City of New York v. Schoeck, 294 N. Y. 559, 569.) A fortiori, then, where it is requested, as here, that the court overrule the Board of Trustees which, by a tie vote, refused to reverse the Medical Board in its finding that the death was not service incurred, “ [i]t is plain [in the case at bar, as in Schoeck that] there is room for difference of opinion and possibility of a contrary finding [to that urged by the petitioner] is not excluded ” (p. 569). And, as here, “ where a pensioning statute expressly confers a discretionary power on a governmental agency, the exercise of that power, predicated on medical proof, *940 may not "be disturbed by the court in the absence of fraud, accident, mistake or bad faith ” (Cohen v. Valentine, 58 N. Y. S. 2d 415, 419, affd. 271 App. Div. 952).
No such element is present in the case at bar. There is no contention that there was fraud or bad faith. And, as to accident or mistake, all that is shown is that the doctors disagreed in some respects, and that the trustees were not unanimous in their determination. But that does not permit the court to substitute its own judgment (whatever that may be on the facts) for that of the Board of Trustees (see Matter of City of New York v. Schoeck, 294 N. Y. 559, 568-569, supra). It is well to recall at this point that the Administrative Code expressly provides that it is where “ death ensues, or results [to a member of the Fire Department] from disease, as the immediate effect of injuries received ” “ while actually engaged in the performance of duty ”, that the Board of Trustees “ upon evidence submitted to it, shall have power to decide whether death so occurred and upon such decision shall award to the widow of such member an annual allowance as a pension ’ ’ not to exceed a specified amount. (Emphasis supplied.)
Death occurred in April 1959, nearly 10 years after the alleged incident on the fireboat, in May of 1949, when the injuries were claimed to have resulted in line of duty. That could hardly be deemed to be “ immediate ” — certainly not from the point of view of chronology; and no conclusive proof was presented or proffered from the point of view of proximate causation. Since the opinions of the majority of the experts were against the petitioner, and the Board of Trustees in effect decided to adopt their conclusion, the court cannot intervene (cf. Matter of Schechter v. State Ins. Fund, 6 N Y 2d 506).
The findings of the Medical Boards and the determinations of the Board of Trustees, bottomed on those findings, were certainly not hasty, capricious, prejudiced, arbitrary, ill considered, illegal, or based upon unsound or unreasonable factual data or professional opinion. But the petitioner urges that the decision denying her a pension should be reversed because it was the negligence of the department which directly contributed to the fireman’s death. That charge is predicated upon two propositions: (1) that, if the department contends that the deceased’s rheumatic heart disease predated his entry into the service in 1939 — Some 20 years before his demise — and that his condition was not caused by the performance of his duties as a fireman, then the department was guilty of negligence in appointing him. In support of this contention, the petitioner makes a proffer of proof of medical testimony to the effect that service as a fire- *941 ilia'll — particularly service ou a fireboat with the resulting exposure to damp and cold — is contraindicated for one suffering from rheumatic heart disease; and (2) that the department was guilty of negligence in not placing the fireman on light duty in 1949 when it allegedly first became aware of his cardiac condition, rather than expose him to two additional years of strenuous exertion since — according to proffered medical testimony— rheumatics may look forward to employability for many years if protected from cold, damp jobs.
Assuming, arguendo only, that an action at law will lie against certain parties for such negligence, and that the facts support the allegations upon which such action must be grounded, the difficulty with the petitioner’s contention is that this.is not an action in negligence against the Fire Department or the City of New York or any of its officials. It is a mandamus proceeding against the Board of Trustees of the New York City Fire Department and is directed against the Retirement and Pension Fund thereof — in which, among others, all the firemen and those dependent upon them have an interest 'which requires due and fair protection.
Thus it is that, while I sympathize with the petitioner, the mandate of the law applicable to the circumstances here at once justifies and compels denial of the applications. Accordingly, the petitions are dismissed.