Ellis J. Staley, Jr., J.
This is an application for an order annulling, canceling and declaring null and void article 10 of the Regulations of the New York State Police issued September 17,1963 and the “ Promotion Examination Announcement No. 1, 1963 ” dated October 21,19C3 on the ground that the said article and Promotion Examination Announcement violate the requirements under article V, section 6 of the Constitution of the State of New York and further do not conform with judicially developed tests and standards pertaining to competitive examination *43 for candidates for promotion in the civil service of the State.
Article 10 of the Regulations of the New York State Police governs the promotion of members to competitive positions within the State Police, The Promotion Examination Announcement No. 1,1963 sets forth requirements for the examination for promotion to the position of Sergeant of the New York State Police to be conducted on November 30, 1963.
Petitioner herein in a prior proceeding before this court challenged the last previous promotion examination conducted for the position of Sergeant of the New York State Police held on December 16, 1961, resulting in this court’s decision that said examination failed to meet the mandate of the Constitution that 1‘ promotions in the civil service of the state * * * shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations which, as far as practicable, shall be competitive ”. (N. Y. Const., art. Y, § 6.) On that examination the relative rates given to the entire examination were 20% for the written portion, 30% for the oral portion and 50% for the performance rating. The court further stated that the order granting the petitioner’s right to a re-examination should include provisions to assure that appropriate and suitable standards applicable to competitive examinations will be adhered to and respected. (Matter of Donohue v. Cornelhis, 39 Misc 2d 539.)
On this proceeding the petitioner raises several issues which he contends again violate the mandate of the State Constitution requiring competitive examinations and that the rules and the Promotion Examination Announcement for the November 30, 1963 examination do not comply with appropriate and suitable standards applicable to competitive examinations.
The first contention of the petitioner is that the relative weights assigned to the three parts of the November 30, 1963 examination are too heavily weighted in favor of the subjective parts of the examination. The relative weights assigned for, said examination are 60% for the written portion, 20% for the service record rating, and 20% for the oral examination. The petitioner contends that a vital 40% of the entire examination depends on the subjective view certain rating officers may take of the individual candidates and infers that the respondent thus maintains personal control of promotions within the State Police by the alleged heavily weighted subjective factors in the promotion examination.
The respondent in answer contends that to attain the eligible list of 300 candidates the examinee must first pass the written examination. In addition the provisions governing the conduct *44 of the service record rating and oral examination are set forth in the Promotion Examination Announcement as follows:
2. Service Record Rating. A Service Record Rating as described in Scope of Service Record Rating shall be prepared for each candidate prior to the date of the written examination which will cover the performance, as it relates to his qualifications for the position of Sergeant, of each member eligible to take the competitive examination for promotion during the two year period of service immediately preceding October 21, 1963, the date of this announcement.
Service Record Ratings shall be prepared under uniform written instructions of the 'Superintendent for the eligible members of each Troop and for the eligible members of each command other than a Troop by a rating board consisting of three (3) Commissioned Officers, one of whom shall be the member’s immediate Commissioned 'Officer Superior. In each Troop, with the exception of Troop “ T ”, the rating board shall consist of three (3) Commissioned Officers, including the Troop Commander or in his absence the Acting Troop 'Commander, one Lieutenant-iSupervisor and the member’s immediate 'Commissioned Officer superior. In Troop “ T ” the rating board shall include the Troop Commander, or in his absence the Acting Troop Commander, and at least two Lieutenants, or a Lieutenant-Supervisor and one Lieutenant, one of whom shall be the member’s immediate Commissioned Officer superior. The number of members on a rating board shall be the same for each member eligible to take the written examination. Relative weight for final rating 20.
Scope of Oral Examination. * * * Multiple teams of two 'Commissioned Officers designated by the Superintendent, acting under uniform written instructions of the ¡Superintendent, will conduct the oral examinations. The number of oral examiners on each team will be the same for the examination of each member eligible to take the oral examination. If a candidate feels that because of close personal association with a member of his oral examination board or for any other reason his grade might 'be affected his request to be examined by another oral examining team will be granted. Such request must be made prior to the beginning of the oral examination. Similarly, Examiner-in-C'harge shall exercise care to avoid assigning candidates to an examining team when the candidate has had close association with a member of the team. Furthermore, any examiner who for any reason whatsoever feels he cannot rate a candidate in an objective and unprejudiced manner, shall so inform the Examiner-inOharge and thus disqualify himself for that candidate.
It is evident that the written portion of the examination under review comprising 60% of the total examination meets the test of competition within the contemplation of the Constitution. To qualify for a place on the promotion .list a candidate must attain a passing grade on the written portion of the examination. It is, therefore, not until a candidate has passed the objective portion of the examination that he is tested on the subjective portions of service record rating and oral examination.
The service record rating portion of the examination herein is completed prior to the written examination and the candidate ,’s service record rating grades are sealed and kept sealed until his grade on the written portion of the examination is established. The rating board for the service record ratings consists of three commissioned officer's and the number of members on a rating *45 board shall be the same for each member eligible to take the written examination. The oral examination is conducted for the 300 candidates who pass the written portion of examination and are certified to the eligible list. Multiple teams of two commissioned officers conduct the oral examination and the number of oral examiners on each team will be the same for the examination of each member eligible to take the oral examination. Further, if a candidate feels that because of close personal association with a member of his oral examination board or for any other reason his grade might be affected, his request to be examined by another oral examining team will be granted.
In my opinion, the subject matter announced for the various portions of the examination and the procedure outlined for the conduct of such examinations are fair and reasonable and meet the test of competition as required by the Constitution. The contention of the petitioner that the possibility of manipulation of the subjective portions of the examination to reasonably assure promotion for a favorite candidate or insure the failure of one in disfavor is without merit.
“ The oral test serves its purpose in a competitive examination. Obviously it may be employed as a test of knowledge. In addition, it may be used to test other qualities.” (Matter of Fink v. Finegan, 270 N. Y. 356, 362.)
“ There is no denial of the power of the Legislature to make experience a factor in determining promotion. What is denied is the power to, establish such a test for one applicant without establishing it for others in the same or like conditions. * * * The mandate of the Constitution is that merit and fitness shall be ascertained ‘ so far as practicable ’ by competitive examination. * * * Discretion there is in determining the limits of the practicable. It is not, however, an uncontrolled discretion, but one subject to the teachings of experience and the supervision of the courts ”. (Barlow v. Berry, 245 N. Y. 500, 503-504.)
“ The mandate of the Constitution for the ascertainment of merit and fitness, so far as practicable, by competitive examination, may not be transformed into an interdict against the examinations which are best adapted for the demonstration of fitness. It would be impossible to formulate a standard by which such qualities may be defined or measured with entire objectivity. The law does not require the impossible or forbid the reasonable. The record discloses that here the examiners have based determination upon their estimates of qualities which, it is reasonably clear, affect the merit and fitness of a teacher and that this estimate is derived from tests calculated reasonably to show those qualities.” (Matter of Bloat v. Board of Examiners, 274 N. Y. *46 367, 373.) (See, also, Matter of Snyder v. Kern, 278 N. Y. 665; Kaplan, The Law of Civil Service, p. 138.)
The examination for promotion to the position of Sergeant in the New York State Police scheduled for November 30, 1963 is hereby approved.
Subsequent to the promulgation on September 17, 1963 of article 10 of the Regulations of New York State Police governing the examinations and promotions of members of the State Police to competitive positions, a revised article 10 was submitted on November 7, 1963 to the Governor for approval which approval was granted on November 22,1963, two days after this proceeding was commenced.
The petitioner herein objects to certain provisions of article 10 as promulgated in September, 1963 and contends that the objections are sufficient to defeat the legality of the proposed examination. He first objects to section 10.3 (a) 3 of the article which provides that no member will be eligible to take a competitive examination for promotion for which notice of examination is given after January 1,1964 unless the adjective rating on such last report of performance rating is at least excellent. Even if such provision is objectionable it does not apply to the examination under review and is, therefore, not relevant. However, the entire provision objected to was eliminated in the revised article 10 effective November 22, 1963.
Petitioner objects to section 10.6 of article 10 which governs the rating of candidates in the event of an identical final rating, which section provides for the progressive application of the examination factors in the order of
1. Grade attained in the service record rating.
2. Grade attained in the oral examination.
3. Grade attained in the written examination.
4. Seniority.
In view of the fact that the eligible list is to be established by the grades attained on the written examination, it is not unreasonable to subordinate that factor to the grades attained on the service record rating and oral examination. Particularly, since the examination is for promotion to a higher and more responsible office. Petitioner further objects to that part of section 10.7 (b) of article 10 which provides that if a candidate appeals from his rating in one or more of the parts of the examination “ such appeal shall be considered as opening for review the written examination, the oral examination and the service record rating in their entirety and, if a move in the candidate’s position on the list is warranted, it may be up or down.”
*47 Revised article 10 deletes the words “ the written examination, the oral examination and the service record rating in their entirety ” and adds in their place “ only the subject or subjects of the examination on which the candidate appealed.” The revised provision conforms with standard civil service procedures and, therefore, is approved.
The final objection of the petitioner relates to section 10.9 (2) and section 10.9 (3) relating to disqualification and removal from the list. It provides that a candidate will be disqualified or deleted from the list if the division physician or assistant division physician find that the candidate has a mental or physical disability to perform the duties of a member of the State Police or if he is found guilty after a hearing or a plea of guilty to a charge of misconduct or a violation of section 8.41 of the Regulations of the State Police. Section 8.41 of the regulations relates to a charge against a member of the State Police accused of acting in any manner tending to reflect discredit against the Division of State Police.
In fixing qualifications for appointment or promotion to a civil service position the departmental agencies have broad discretion in fixing physical requirements to be met.
In the case of Matter of Strauss v. Hannig (256 App. Div. 662, affd. 281 N. Y. 612) the petitioner passed an examination for the position of high school teacher and the defendants the Board of Examiners for the Board of Education of the City of New York, on the advice of their medical staff that the petitioner was suffering from a heart ailment refused to place his name on the eligible list. The court affirmed the board’s decision stating as follows on page 664:
‘ ‘ The mere existence of differences of opinion as to the petitioner’s physical fitness would not warrant a finding by this court that a determination made by the board to act on the advice of its own medical staff was arbitrary or capricious. In fact, if the board, under such circumstances, had appointed the petitioner in disregard of the opinion of its medical staff, there might be greater reason for such a finding. * * *
“ Nor can it be said that the board in this case fixed standards which were unreasonable with respect to the physical fitness of candidates. The rule of law is that, unless the standards applied by the appointing body are so clearly irrelevant and unreasonable as to palpably be arbitrary and improper, they are to be sustained.” (See, also, Matter of Eichler v. McElligott, 259 App. Div. 151; Matter of Ciasulli v. McNamara, 277 App. Div. 541; Matter of Gumning v. Altman, 198 Misc. 123; Matter of Simon v. Kennedy, 5 Misc 2d 17.)
*48 Subdivision 4 of section 50 of the Civil Service Law provides as follows: “The state civil service department and municipal commissions may refuse to examine an applicant, or after examination to certify an eligible * * * (d) who has been guilty of a crime or of infamous or notoriously disgraceful conduct ”.
And subdivision 1 of rule 11 of the Eules for the Classified Service provides as follows: “ Good moral character and habits and a satisfactory reputation shall be requirements for appointment to a position subject to these rules. Any applicant who is found to lack such requirements shall be disqualified for examination or, after examination, for certification and appointment.” It has been frequently held that, if a candidate is guilty of bad conduct, the appointing officers have the power to rescind certification to an eligible list even where such bad conduct is discovered between the time of the establishment of the list and the time of his appointment. (Matter of Shraeder v. Kern, 287 N. Y. 13; Matter of Beck v. Finegan, 254 App. Div. 110 ; Matter of Walsh v. Watson, 198 Misc. 643; Matter of Vegas v. Schechter, 13 Misc 2d 265; 1950 Atty. Gen. 141.)
In Matter of Vegas v. Schechter (supra) the respondent New York City Civil Service Commission refused to qualify the petitioner for the position of patrolman on the ground that he had repeated traffic violations and failed to appear on the return date of the summonses. The court affirmed the Commissioners’ actions as follows (pp. 266-267):
“ In review of this type of proceeding the court must appraise the vital function of the police as guardians of law and order, with the prerequisite proper attitude for law enforcement. For some positions in the civil service, a background of acquisition of traffic summonses and the failure to pay the fines therefor until after the issuance of citations might not be reason for disqualification, as in those instances where the enforcement of laws or the security of the people is directly concerned. * * *
“While it is true that the traffic violations herein do not involve a moral taint, the number thereof coupled with the fact that the petitioner failed to appear indicates such a disrespect for the law and the mandates of the court as would justify the commission’s act in disqualifying petitioner for the position involved.”
In view of the foregoing, the objections of the petitioner to sections 10.9 (2) and 10.9 (3) relating to disqualification and removal must be rejected since the requirements under the rules for a physical and mental qualification by a candidate for the position of Sergeant in the State Police and for a record of a high degree of conduct and obedience to law comply with the *49 high standards that should be used to test candidates seeking that position. If there should be any abuse in the application of those sections by the respondent, the candidate would be entitled to a review of the respondent’s determination in an article 78 proceeding.
The application of the petitioner herein is, therefore, denied in all respects. No costs allowed.