Nathan R. Sobel, J.
Petitioner has been denied a license as a substitute teacher solely because of overweight. Her competence in all other respects has been established by an excellent record during three terms in the city school system certified to by her superiors.
*547 She brings this petition to annul that determination. Her petition is granted.
The Legislature, other than providing for the creation in the city’s school system of a Board of Examiners “ to examine all applicants who are required to be licensed” (Education Law, § 2569), has not in specific terms delegated authority to either the Board of Education or the Board of Examiners to adopt standards or “ tests ” for health or physical fitness. As is true with respect to most agencies of government (with the exception of police or fireman, where such standards are specifically authorized) these derive whatever such authority they possess from the Constitution. Appointments in the civil service of the State and municipalities shall be made ‘ ‘ according to merit and fitness ” (N. Y. Const., art. V, § 6).
From this constitutional authority the right of government agencies to adopt such 1 ‘ health ’ ’ standards may be inferred, provided such standards are reasonably and rationally related to ability to perform — in the instant case, ability to teach plus maintain order.
The Board of Examiners has adopted standards governing health and physical fitness: “A rating of ‘ satisfactory ’ in the physical and medical test shall imply the ability of the applicant to perform effectively the duties of the position at present and in the immediately foreseeable future. A rating of ‘ unsatisfactory ’ in the physical and medical test shall be based on a physical or mental or emotional condition that may endanger the health or safety of the pupils, cause frequent or prolonged absence, exert an unwholesome or disturbing influence upon children, or in other ways interfere with the applicant’s ability to render effectively at present or in the immediately foreseeable future the services normally required in the position.” (By-laws, § 10.)
Applicants for licenses are advised, in advance, the precise ‘1 tests ” to be applied by means of 11 clarifying illustrations. ’ ’ With respect to obesity, this 11 illustration ’ ’ is given: Extreme underweight or overweight in terms of age — height — sex— standard tables, type of body build and general state of health with particular reference to the applicant’s ability to perform the duties of the position sought. The illustration merely advises that persons overweight will be “tested” as the Constitution requires with reference to their own particular ability to perform.
The ultimate decision is then made from standard weight tables by permitting a deviation of 40 % from normal. Petitioner here weighed 221 pounds — a deviation from her table standard of 76%.
*548 Thus the board has adopted standards and illustrations and an objective conclusion is reached by a mathematical computation. No subjective performance test is given.
True, the medical director makes ‘ ‘ findings ’ ’, but on examination these findings as well are completely objective and have no relation to the petitioner’s (not someone else’s) ability to perform.
Thus the medical director in the instant case concludes entirely objectively, based on the deviation from “ normal ”, “ that such overweight presently interferes with safety both to the teacher and to the others for whom she is responsible —in routine and emergency situations.” This finding presumes that overweight is inexorably related to agility, something which a lot of football coaches would dispute.
Another similarly objective finding is not that this petitioner but that all obese persons are generally prone to certain specified illnesses — rising blood pressure, swelling of extremities, diabetes, cardiovascular ailments ■ — all of which may in the future lead to ‘1 absences ’ ’ and to early retirement from service. It is however established that this petitioner has had only two days of absence in three terms of teaching. And it is a matter of public knowledge that a former President and Chief Justice of the United States, also rather obese, rarely missed a day from his busy schedule in a long public career.
No case from an appellate court or from the Commissioner of Education has been shown to me which justifies refusal to license a teacher solely by reason of overweight. Nor have I been able to find such authority elsewhere in the Nation from a cursory examination of the digests. (See, however, Test of Moral Character or Fitness of Teachers, etc., Ann. 96 ALR 2d 536; Matters Proper for Appointment of Teachers, Ann. 94 A. L. R. 1484.)
To the contrary the First Department, discussing an objective prognosis of a teacher applicant’s future illness, said: “Of course the scope of a physical examination should not include mere speculation as to the span of life, but it seems reasonable to permit it to include inquiry into the question as to whether a recognized disease, presently existing, will render the applicant unable to perform his duties in a short time.” (Matter of Strauss v. Hannig, 256 App. Div. 662, 665, affd. 281 N. Y. 612; see, also, Matter of Hubbard, 1 Ed. Dept. Rep. 402 [June 27, I960].)
And, in the same connection, the Commissioner of Education said: “ Bespondent Board might as well deny a candidate a license because of the possibility that the candidate [might] meet with an accident in the foreseeable future ’ ’. (Matter of *549 Warner, 1 Ed. Dept. Rep. 58 [June 11,1958] ; see to same effect Matter of Epstein 5 Ed. Dept. Rep. 38 [Aug. 26,1965].)
To which of course should be added that if the predictions in fact eventuate, the law permits revocation of a license for that reason.
No one can reasonably deny the need to limit appointments to persons in good health when such condition affects ability to discharge the duties of the position. For example obesity may surely be made a constitutional standard for firemen and policemen. Such a standard is reasonably and rationally related to fitness to perform the duties of such positions. But obesity, standing alone, is not reasonably and rationally related to the ability to teach or to maintain discipline.
It may be noted that there is no record of a teacher being denied appointment because of wderweight; or of a male teacher, because of overweight. When an objective standard of obesity, rather than a subjective test of ability to perform, is applied to a female teacher applicant, it can become an aesthetic standard rather than the constitutionally commanded standard of “ merit and fitness.” (Cf. Matter of Shpritzer v. Lang, 17 A D 2d 285, affd. 13 N Y 2d 744.)
To put it simply, the board here is merely guessing that petitioner is not now or will not in the future be able to perform. Mere guesswork is arbitrary and capricious.
A contention is made half-heartedly by the respondent that since the board is under no obligation to provide employment it should be permitted to condition its benevolence in the same manner as a private employer who may hire and fire at will. This is the long ago discarded aphorism of Justice Holmes : ‘ ‘ the petitioner may have a constitutional right to talle politics, but he has no constitutional right to be a policeman ’ ’ (McAuliffe v. New Bedford, 155 Mass. 216, 220 [1893]; cf. Torasco v. Watkins, 367 U. S. 488; Spevack v. Klein, 385 U. S. 511; Keyishian v. Board of Regents, 385 U. S. 589). The fact that a person is not compelled to hold public office cannot be made an excuse for barring her from public office by State-imposed criteria forbidden by our State Constitution.
While First Amendment rights are not here involved so as to warrant condemnation of the standards per se (see Matter of Bell v. Waterfront Comm., 20 N Y 2d 54), I do hold that as applied to this petitioner the standards employed to determine merit and fitness are violative of the State Constitution (art. V, § 6), and her testing by objective criteria rather than by subjective tests of ability to perform results in a determination Avhich is arbitrary and capricious.