Milton Mollen, J.
The petitioner moves for an order prohibiting the respondents from terminating his license as a substitute teacher of English in the Day Junior High Schools for unsatisfactory physical and medical examination.
In 1965 the petitioner applied for a license as a substitute teacher of English in the Day Junior High 'Schools. This license was granted to him conditionally, that is, subject to passing the physical and medical examination. He served in that position for three and a-half years.
In 1968 petitioner applied for a license as a substitute teacher of English in the Day High Schools (a different license). In connection with the examination for that license, he was medically examined on January 9, 1970. That examination, as well as subsequent examinations, hospital records and investigation, disclosed the material facts upon which the respondents acted.
Shortly after the issuance of the Junior High School substitute license the petitioner became a user of heroin and continued its use through January 1969. The principal of the school at which he last taught during the first half of the 1968-69 school year gave him a “deficient rating” in all respects. She reported: 1 ‘ He was of no use to us. Could not keep class in order, did not prepare anything and was frequently absent ” and requested his reassignment. On September 17, 1969 the petitioner was classified 4F by his local draft board by reason of rejection at the examining and *582 induction station for “ Psychiatric and Drug Addiction.” Petitioner’s problems with narcotics became so intense that on January 31, 1969 he voluntarily entered Grade Square Hospital and remained there until March 11, 1969. The hospital •diagnosis was “drug abuse, heroin intoxication.” He was placed immediately on the Methadone maintenance program and was discharged to follow that treatment on an out-patient basis. The petitioner is still on Methadone and also continues to undergo psychotherapy.
Petitioner was examined by Dr. Mason, a panel psychiatrist, on March 24, 1970. He states in his report, after reciting the history: “ There is no question about the fact that [petitioner] — like all patients on Methadone maintenance — is dependent on Methadone, which controls his desire for heroin. It is also a fact that for all intents and purposes he is functioning at a level commensurate with his endowment. It is another fact that he had and still has psychological problems which led to the original heroin, but which are being taken care of.”
After the psychiatrist’s report was received, the petitioner’s file was reviewed by the respondents’ examining doctors, Eve and Metz, on April 13, 1970. Dr. Eve in her report states: “ (1) Methadone is an opiate derivative and is itself an addictive drug * * *. It does not solve the social and psychological problems leading to addiction. (2) * * * All reports on Methadone maintenance indicate difficulty with patient staying on the Methadone with periodic relapses. (3) The candidate’s psychotherapy is at best (to our knowledge) of one year’s duration. In view of his problem it would seem that this is a short time in psychotherapy and his problems — while they may be responding — are far from settled * * *. I do not believe [he] is acceptable at the present or in the foreseeable future.” Dr. Metz, the other examining doctor, reports: ‘ ‘ This candidate has psychological problems. * * * Methadone therapy is not yet a fully accepted form of therapy for heroin addiction.”
The final report of the medical staff on May 7, 1970, in summary, was as follows: ‘ ‘ Heroin Addiction and Methadone Therapy. Despite consideration of the rehabilitative aspects of this case, our physicians feel that 1) what psychological problems first caused this heroin addiction are likely still present; 2) Methadone is still an addicting drug and the candidate is now a Methadone addict; 3) There is particular objection to his teaching because of the necessary contact with the immature individuals in our culture (children) involved in the job.”
*583 The examiner in charge of physical and medical examinations accepted the recommendation of the medical division that petitioner was “ not fit ” for license and on May 18, 1970, recommended to the Board of Examiners that petitioner be rated “ not fit” on the physical and medical examination — to be applied at once. On May 26, 1970, the Board of Examiners voted to deny the application for extension of the validity of the petitioner’s license as a substitute teacher of English, Day Junior High Schools issued on 'September 5, 1965 which license was “ subject to passing the physical and medical examination,” because of unsatisfactory physical and medical examination and to terminate said license as of June 19, 1970. On June 17, 1970, the board voted to refuse a license to petitioner as a substitute teacher of English — Day High School because of unsatisfactory physical and medical examination.
The petitioner alleges that he has remained on the Methadone maintenance program and receives psychiatric treatment twice a week and group therapy once a week. He contends that he has undergone a successful rehabilitation program and is ready and able to perform the duties required by the license. In support of his position, he submits the letter of Dr. Lowison, dated January 21, 1970, a staff psychiatrist at Gracie Square Hospital, and the letter of Arnold Tannen, dated June 17, 1970, the hospital’s administrator of ambulatory services, both of which letters are attached to the petition. Dr. Lowison states: “ I have seen him weekly since he became an out patient and it is my impression that he has made an excellent adjustment and has been capable of assuming responsibilty for his own personal conduct.” Mr. Tannen’s letter sets forth general information as to the Methadone maintenance program and states: “ Since his admission to the program [petitioner] has made an excellent adjustment and what can be presently considered total rehabilitation and reintegration into society. His completion of a Master’s Degree is an obvious example of this change.” This is qualified by the subsequent statement that the petitioner’s “personal conduct in the future is still very much up to him.”
It is the opinion of this court that the petitioner has failed to establish that the action of the Board of Examiners was arbitrary and capricious. It cannot be said that the board has fixed standards which were unreasonable with respect to the physical fitness of candidates. Unless the standards are so irrelevant and inappropriate as to be palpably arbitrary and unreasonable, the court must sustain them (People ex rel. *584 Moriarty v. Creelman, 206 N. Y. 570, 576). It is not the function of this court to evaluate the Methadone maintenance program. The mere existence of differences of opinion as to the petitioner’s physical fitness does not warrant a conclusion that the determination of the Board of Examiners to act on the advice of its medical staff was arbitrary or capricious (Matter of Strauss v. Hannig, 256 App. Div. 662, affd. 281 N. Y. 612; Matter of Adams v. Board of Educ. of City of N. Y., 286 App. Div. 868). The petitioner’s drug addiction and psychological problems are undisputed. The effective performance of one’s duties may be impaired by drug addiction and psychological disabilities as completely as in the case of a physical disability. Evidence of drug addiction and psychological disabilties is sufficient to sustain an unsatisfactory physical and medical rating and to justify a termination of the license (Matter of Coriou v. Nyquist, 33 A D 2d 580, mot. for lv. to app. den. 26 N Y 2d 610). The degree and character of the examinations, the hospital report and investigation, and the considered appraisal of the entire record, were sufficient to inform the Board of Examiners as to the physical and mental fitness of the petitioner (Matter of Gollery v. Teachers’ Retirement Bd., 267 App. Div. 835, affd. 294 N. Y. 705).
The inclusion in the examining doctors’ medical reports of a prognosis with respect to the petitioner’s physical fitness that he was not acceptable at the present time or in the foreseeable future had a reasonable basis. The petitioner’s argument that any danger to children, if he is placed back in the classroom, exists only in the minds of the respondents, is subject to reasonable dispute. Petitioner stated when examined that although he was using heroin during his teaching career, he was never discovered nor was anyone aware of his drug addiction. This statement clearly highlights the seriousness of the problem.
The court rejects the argument that petitioner’s license should be reinstated because the State is spending a great deal of money on the drug addiction program and the money will be wasted if these ‘ ‘ afflicted people ’ ’ have no incentive and are treated as outcasts of society. There is validity to the point that drug addicts should not be treated as outcasts. However, the relationship between teacher and student is an extremely sensitive one, involving many nuances of inter-reaction. However sympathetic the court may be to the position of the moving party, there was a reasonable basis for the determination made by the Board of Examiners. The court may not substitute its judgment for that of the board (Matter of *585 Collery v. Teachers’ Retirement Bd., supra; Matter of Fallon v. Board of Higher Educ. of City of N. Y., 9 A D 2d 766). Accordingly, the motion is denied and the petition dismissed.